PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
GEORGE S. KHOURY, ESQ. (STATE BAR NO. 269738)
PRICE AND ASSOCIATES
A Professional Law Corporation
The Latham Square Building
1611 Telegraph Avenue, Ste. 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625
E-mail: pypesq@aol.com

Attorneys for Plaintiff
CRAIG BUTLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRAIG BUTLER,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION DBA AMTRAK, RUDY DURKOVIC in his individual capacity, GREG AVEY in his individual capacity, and DOES 1 through 15,<br><br>        Defendants. | NO. 10cv3814<br><br>**FIRST AMENDED COMPLAINT FOR RACE DISCRIMINATION**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff CRAIG BUTLER by and through his attorneys, alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under 42 U.S.C. Sections 1981(a), 2000(e) and 1983. Plaintiff invokes jurisdiction over his federal claim pursuant to the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The acts and practices complained of herein occurred in Cook County, Illinois, within this judicial district.

2.      Jurisdiction over Plaintiff's claims under state law is invoked pursuant to the provisions of 28 U.S.C. Section 1367. The claims which arise under state law are so related to claims within the original jurisdiction of this Court that they form a part of the same case and controversy under Article III of the United States Constitution.

**PARTIES**

3.      Plaintiff CRAIG BUTLER is a United States citizen and an African-American male. He was employed as an Electrician by Defendant NATIONAL RAILROAD PASSENGER CORPORATION in its railroad yards in the Chicago area for approximately six (6) years, from October 9, 2004 up until his termination in July 2010. While employed by Defendant NATIONAL RAILROAD PASSENGER CORPORATION, MR. BUTLER resided and worked in Cook County, Illinois.

4.      Defendant NATIONAL RAILROAD PASSENGER CORPORATION (hereinafter "AMTRAK") is now and at all times mentioned herein was, a private entity, organized and created by the United States, to provide rail travel for hire for passengers and freight throughout the United States.

5.      Defendant RUDOLPH DURKOVIC (hereinafter "DURKOVIC") is a Foreman employed by Defendant AMTRAK and a supervisor within MR. BUTLER's chain of command. DURKOVIC had sufficient authority to bind AMTRAK with regard to employment decisions which adversely affected MR. BUTLER's employment and working conditions. MR. BUTLER sues Defendant DURKOVIC in his individual capacity only.

6.      Defendant GREG AVEY (hereinafter "AVEY") is a Superintendent employed by Defendant AMTRAK and was a supervisor within MR. BUTLER's chain of command. Defendant AVEY had sufficient authority to bind AMTRAK with regard to employment decisions which adversely affected MR. BUTLER's employment and working conditions. MR. BUTLER sues Defendant AVEY in his individual capacity.

7.      MR. BUTLER is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 15, inclusive, and therefore sues these Defendants by

such fictitious names. MR. BUTLER is informed and believes and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged herein, and that his injuries were proximately caused by their conduct. MR. BUTLER will amend this Complaint to allege their true names and capacities when ascertained.

**FACTUAL ALLEGATIONS**

8. MR. BUTLER commenced his employment with AMTRAK as a signalman on October 9, 2004. MR. BUTLER was assigned to work at various locations within the Chicago area, including the 14th Street Lumber Yard and the 16th Street Lumber Yard. He has held positions with AMTRAK as a Locomotive Electrician since February 2007.

9. Defendant DURKOVIC was assigned as a Foreman II at various locations within the Chicago area, including the 14th Street Lumber Yard and the 16th Street Lumber Yard. During the years of his employment, Defendant DURKOVIC has routinely discriminated against African-Americans and other minority employees, by *inter alia*, targeting them for unwarranted discipline, making false accusations in order to initiate disciplinary actions against them, denying them overtime opportunities, denying them the use of equipment, making unequal work assignments and giving them unsafe work assignments. Defendant DURKOVIC routinely refers to African-Americans as "monkeys" and "bi–hes" and makes disparaging comments to and about African-American workers, calling them, among other things, "lazy," "dumb" and "stupid."

10. In or about August 2008, MR. BUTLER came under the supervision of Defendant DURKOVIC. MR. BUTLER became aware of Defendant DURKOVIC when Defendant DURKOVIC falsely accused MR. BUTLER of not being sufficiently productive during his shift. Although MR. BUTLER protested the false allegation, Defendant DURKOVIC initiated and placed a disciplinary notice in MR. BUTLER's work file. Prior to this initial encounter with Defendant DURKOVIC, MR. BUTLER had not been subjected to any type of discipline during his employment with AMTRAK.

11. On or about September 15, 2008, MR. BUTLER requested and received a transfer to a different Yard working under a different Foreman. Within weeks, however,

Defendant DURKOVIC arranged to switch jobs with MR. BUTLER's new Foreman, and became MR. BUTLER's Supervisor again.

12. While working under Defendant DURKOVIC's supervision from September 2008 until June 2010, MR. BUTLER was subjected to severe and pervasive racial harassment. Defendant DURKOVIC routinely called MR. BUTLER "lazy," "dumb" and "stupid," told MR. BUTLER that MR. BUTLER was incompetent and suggested that MR. BUTLER quit or seek out another job. Defendant DURKOVIC refused to allow MR. BUTLER to take his regular lunch break while allowing his Caucasian co-workers to leave the yard to go to lunch. Defendant DURKOVIC denied MR. BUTLER's requests for HVAC training, and to use a golf cart and tool locker while giving those privileges to the Caucasian workers. Defendant DURKOVIC falsely accused MR. BUTLER, among other things, of failing to perform his duties, insubordination, violating AMTRAK's attendance policy, and physically threatening Defendant DURKOVIC.

13. During the time that Defendant DURKOVIC supervised MR. BUTLER, Defendant DURKOVIC intentionally limited the opportunities for overtime assignments for African-Americans. When MR. BUTLER would report for overtime, Defendant DURKOVIC assigned him to work as a laborer instead of the normal work of electrician. Defendant DURKOVIC's discriminatory assignment of work and hostile attitude caused MR. BUTLER to forego his opportunity to work overtime which resulted in a loss of wages of approximately $30,000 in 2009 and an unknown amount in 2010.

14. Defendant DURKOVIC also impacted MR. BUTLER's compensation by routinely under-reporting MR. BUTLER's work hours to payroll. In order for MR. BUTLER to be paid for his hours, Defendant DURKOVIC had to submit work orders showing the hours that MR. BUTLER worked. Defendant DURKOVIC would routinely fail to turn all of MR. BUTLER's work orders to HR/payroll thereby causing MR. BUTLER's paycheck to be less than what MR. BUTLER was entitled to receive. When MR. BUTLER complained to HR/payroll, the hours would be restored on the next paycheck.

15. On December 10, 2008, Defendant DURKOVIC assigned MR. BUTLER

and a Caucasian co-worker to work on a locomotive engine. Under AMTRAK's work rules and normal procedures, Defendant DURKOVIC was required to set up blue flag protection on the locomotive pursuant to the Federal Railroad Administration's blue flag policy. Defendant DURKOVIC did not perform his duties and failed to set up the blue flag protection.

16. On December 11, 2008, Defendant DURKOVIC reported to Defendant AVEY that he observed MR. BUTLER working without blue flag protection. On December 12, 2008, Defendants DURKOVIC and AVEY initiated disciplinary charges against MR. BUTLER for a blue flag rule violation and removed MR. BUTLER from service. MR. BUTLER was off work for approximately two weeks without pay until he agreed to waive a formal disciplinary hearing in order to be able to return to work. The Caucasian employee working with MR. BUTLER was not charged with anything or removed from service.

17. On December 14, 2008, MR. BUTLER contacted Defendant AMTRAK's Dispute Resolution Office ("DRO") and filed a complaint of discrimination based on his race. In a subsequent investigation, the DRO found that it was Defendant DURKOVIC's responsibility to set up the blue flag protection, and that Defendant DURKOVIC targeted and disciplined MR. BUTLER because of his race. The DRO investigation also found that Defendant DURKOVIC had been overheard making derogatory remarks about minorities as well as making race-based employment decisions. Although the DRO recommended that appropriate action be taken to address Defendant DURKOVIC's conduct, no action was in fact taken against Defendant DURKOVIC.

18. On or about February 5, 2009, while the DRO complaint and investigation was pending, Defendant DURKOVIC falsely accused MR. BUTLER of insubordination and making threatening comments toward him. MR. BUTLER was removed from service and charged with various rule violations. Following a brief return to work, MR. BUTLER was off work without pay for more than two (2) months until April 2009.

19. On July 29, 2009, the DRO investigation and findings were released to MR. BUTLER. A month later, on August 28, 2009, AMTRAK agreed to remove the blue flag violation

and discipline from MR. BUTLER's record and compensate him for the two weeks that he was out of service in December 2008. AMTRAK gave MR. BUTLER a check for the two weeks pay on September 5, 2009. Shortly thereafter, on September 25, 2009, AMTRAK notified MR. BUTLER that Defendant DURKOVIC had alleged another blue flag violation against him which allegedly occurred on September 9, 2009. MR. BUTLER was charged with this rule violation and on November 13, 2009, he received a thirty (30) working day suspension without pay.

20. MR. BUTLER was also falsely charged with a violation of AMTRAK's attendance policy on September 25, 2009. MR. BUTLER was pressured by AMTRAK to sign a waiver for this rule violation and refused. No discipline was imposed when MR. BUTLER was able to produce documents which clearly established the lack of a violation.

21. On or about June 13, 2010, MR. BUTLER was required to submit to a federally mandated drug and alcohol test. MR. BUTLER tested positive for alcohol with a specific result of .021% Breath Alcohol Concentration, .001% over the limit of .020%. AMTRAK did not retest the sample in violation of established procedures to ensure its accuracy. On July 12, 2010, AMTRAK terminated MR. BUTLER's employment, ostensibly for various violations related to alcohol use. MR. BUTLER is informed and believes that an alleged violation of these work rules, even if true, does not usually result in termination of employment.

22. During the time that MR. BUTLER worked for AMTRAK, he observed and was informed and believes, and thereon alleges that AMTRAK engaged in a pattern and practice of discrimination by charging African-Americans with rule violations more frequently than Caucasian employees, and imposing harsher discipline on African-Americans charged with rule violations than the discipline meted out to Caucasian employees.

23. Defendant AMTRAK's disparate treatment of MR. BUTLER and his African-American co-workers, including but not limited to excessive and unwarranted discipline, harsher disciplinary penalties, denial of overtime opportunity, denial of training, and denial of work equipment, is consistent with a pattern and practice of discrimination against minority employees. Defendant AMTRAK's retaliatory actions against MR. BUTLER, including but not

limited to his termination, is consistent with a pattern and practice of retaliation against minority employees who challenge AMTRAK's discriminatory practices.

24. MR. BUTLER has exhausted his administrative remedies with respect to the hostile work environment and racially discriminatory practices by submitting a complaint to the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC). On March 25, 2010, the EEOC issued a Notice of Case Closure, inclusive of a Notice of Right to Sue. (A true and correct copy of the Right to Sue Notice is attached hereto as Exhibit A.)

## DAMAGES

25. As a result of the acts alleged herein, MR. BUTLER sustained and will continue to sustain substantial loss of earnings, and benefits in an amount to be determined according to proof. In addition, MR. BUTLER has suffered and will continue to suffer damages to his career and reputation, in an amount to be determined according to proof.

26. As a further proximate result of the Defendants' actions as alleged herein, MR. BUTLER was humiliated, hurt and injured in his health, strength and activity, and suffered and continues to suffer loss of reputation, goodwill and standing in the community, scorn and humiliation, embarrassment, hurt feelings, mental anguish and suffering, depression, anxiety, sleep apnea, loss of enjoyment of life, fearfulness for his physical safety, and a general loss of self-esteem and well-being, all to MR. BUTLER's damage in an amount to be shown according to proof.

27. Defendants DURKOVIC and AVEY's acts were willful, wanton, malicious and oppressive in that they each knew or should have known that his conduct was unreasonable and illegal. Furthermore, Defendants DURKOVIC and AVEY's acts were carried out in wilful and conscious disregard of MR. BUTLER's rights and well-being, entitling MR. BUTLER to punitive damages in an amount appropriate to punish or make an example of each of them.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. SECTION 1983**
**RACIAL DISCRIMINATION**
**(AGAINST DEFENDANTS DURKOVIC and AVEY)**

28. MR. BUTLER incorporates by reference Paragraphs 1 through 27, as if fully

set forth herein.

29. In doing each and all of the acts alleged herein, Defendants DURKOVIC and AVEY were acting under color of state law.

30. By their conduct herein alleged, Defendants DURKOVIC and AVEY intentionally, wilfully and without justification, deprived MR. BUTLER of his rights, privileges and immunities secured him by the Constitution and the laws of the United States, including but not limited to his right to due process and equal protection as provided by the Fourteenth Amendment, in violation of 42 U.S.C. Section 1983.

31. Defendant DURKOVIC engaged in repeated acts of racial harassment in such a manner as to alter the terms and conditions of MR. BUTLER's employment based upon his race, including but not limited to, initiating unwarranted disciplinary actions against MR. BUTLER, denying him the opportunity to work overtime, denying him the opportunity for job training, making disparaging comments to and about MR. BUTLER, denying him the use of equipment to perform his work, denying him lunch breaks and improperly withholding his pay by intentionally under-reporting his work hours. Defendant AVEY was aware that Defendant DURKOVIC was creating and maintaining a racially hostile work environment for African-Americans and participated in the conduct by approving and ratifying Defendant DURKOVIC's disparate treatment of AMTRAK employees based on their race.

**WHEREFORE**, Plaintiff requests relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981**
**RACE DISCRIMINATION**
**(AGAINST ALL DEFENDANTS)**

32. MR. BUTLER incorporates by reference Paragraphs 1 through 31, as if fully set forth herein.

33. In committing the acts and omissions alleged herein, Defendants intentionally, and without justification, deprived MR. BUTLER of the rights, privileges and immunities secured to him by the Constitution and laws of the United States, particularly his right to be free from intentional discrimination based on race, as provided by 42 U.S.C. § 1981.

34. In doing each and all of the acts alleged herein, Defendants acted in conformance with the AMTRAK's official policy, custom and practices of tolerating, encouraging and approving racial discrimination and maintaining a hostile work environment for African-Americans.

35. Defendants AVEY and AMTRAK have been given notice of a pattern of ongoing unconstitutional civil rights violations and racial discrimination against MR. BUTLER and other African-Americans because of their race. Despite said notice, Defendants AVEY and AMTRAK ratified and perpetuated this pattern and practice of constitutional violations by failing to take adequate, necessary or appropriate measures to investigate or prevent the conduct.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
### VIOLATION OF TITLE VII
### RACE DISCRIMINATION
### (AGAINST DEFENDANT AMTRAK)

36. MR. BUTLER incorporates by reference Paragraphs 1 through 35, as if fully set forth herein.

37. In committing the acts and omissions alleged herein, Defendant AMTRAK intentionally, and without justification, deprived MR. BUTLER of the rights, privileges and immunities secured to him by the Constitution and laws of the United States, particularly his right to be free from intentional discrimination based on race, as provided by 42 U.S.C. § 2000e (Title VII).

38. In doing each and all of the acts alleged herein, Defendant AMTRAK acted in conformance with its official policy, custom and practices of tolerating, encouraging and approving racial discrimination and maintaining a hostile work environment for African-Americans.

39. Defendant AMTRAK has been given notice of a pattern of ongoing unconstitutional civil rights violations and racial discrimination against MR. BUTLER and other African-Americans because of their race. Despite said notice, Defendant AMTRAK has demonstrated deliberate indifference to this pattern and practice of constitutional violations by

failing to take adequate, necessary or appropriate measures to investigate or prevent the continued perpetuation of said conduct.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981**
**RETALIATION**
**(AGAINST ALL DEFENDANTS)**

40. MR. BUTLER incorporates by reference Paragraphs 1 through 39, as if fully set forth herein.

41. During the years of his employment with Defendant AMTRAK, MR. BUTLER had a reasonable good faith belief that the actions of the Defendants constituted racial discrimination in violation of his Constitutional rights. Based upon this belief, MR. BUTLER complained to Defendant AMTRAK's DRO in December 2008 regarding AMTRAK's unlawful actions.

42. Defendants AMTRAK, DURKOVIC and AVEY were aware that MR. BUTLER engaged in protected activity, including but not limited to the complaints of Discrimination he filed with the DRO in December 2008, and subsequently with the Illinois Department of Human Rights in October 2009.

43. As a result of MR. BUTLER's protected activity, Defendants subjected MR. BUTLER to more severe adverse treatment, including but not limited to, initiating multiple investigations and disciplinary actions against him, denying him training opportunities provided to other employees, placed him under increased scrutiny at work and making false accusations of incompetent work performance,

44. In committing the acts and omissions alleged herein, Defendants intentionally, and without justification, deprived MR. BUTLER of the rights, privileges and immunities secured to him by the Constitution and laws of the United States, particularly his right to be free from retaliation as provided by 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff requests relief as hereinafter set forth.

///

**FIFTH CAUSE OF ACTION**
**VIOLATION OF TITLE VII**
**RETALIATION**
**(AGAINST DEFENDANT AMTRAK)**

45. MR. BUTLER incorporates by reference Paragraphs 1 through 44, as if fully set forth herein.

46. In committing the acts and omissions alleged herein, Defendants intentionally, and without justification, deprived MR. BUTLER of the rights, privileges and immunities secured to him by the Constitution and laws of the United States, particularly his right to be free from retaliation as provided by the 1964 Civil Rights Act (Title VII).

**WHEREFORE**, Plaintiff requests relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF IHRA**
**RACE DISCRIMINATION**
**(AGAINST ALL DEFENDANTS)**

47. MR. BUTLER incorporates by reference Paragraphs 1 through 46, as if fully set forth herein.

48. By their conduct as alleged herein, Defendants violated MR. BUTLER's civil rights in direct violation of Section 2-102 of the Illinois Human Rights Act, and his right to be free from unlawful discrimination based on race in direction violation of Section 1-102 of the Act.

**WHEREFORE**, Plaintiff requests relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF IHRA**
**RETALIATION**
**(AGAINST ALL DEFENDANTS)**

49. MR. BUTLER incorporates by reference Paragraphs 1 through 47, as if fully set forth herein.

50. By their conduct as alleged herein, Defendants violated MR. BUTLER's civil rights in direct violation of Section 6-101 of the Illinois Human Rights Act, and his right to be free from unlawful retaliation for his protected activity.

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

1. Compensatory and special damages, including but not limited to, lost wages and benefits, and damages for mental and emotional distress, in excess of $500,000 to be determined at the time of trial;

2. Costs of suit incurred herein, including reasonable attorneys' fees;

3. Punitive and exemplary damages in an amount appropriate to punish and make an example of Defendants DURKOVIC and AVEY, to be determined at the time of trial;

4. Injunctive relief against Defendant AMTRAK, its agents and employees, enjoining them from denying, or aiding or inciting the denial of, the civil rights of any African-American employees on the basis of race, and compelling Defendant to take affirmative steps to ensure and fair and non-hostile work environment for African-American employees at every fire station within its jurisdiction;

5. Injunctive relief against Defendant AMTRAK, its agents and employees, enjoining them from denying, or aiding or inciting any retaliation against MR. BUTLER on the basis of his protected activity; and

6. Such other and further relief as the Court deems just and proper.

Dated: September 30, 2010           PRICE AND ASSOCIATES

                                                /s/ *Pamela Y. Price*
                                       PAMELA Y. PRICE, Attorneys for Plaintiff CRAIG BUTLER

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues triable to a jury in each and every cause of action of his Complaint.

Dated: September 30, 2010         PRICE AND ASSOCIATES

        /s/ *Pamela Y. Price*
        PAMELA Y. PRICE, Attorneys for Plaintiff
        CRAIG BUTLER